UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                           CASE NO.:  19-26849-BKC-AJC
                                                                                      Chapter 7
**JUMANJI NEST LLC**

_____Debtor._____/

**TRUSTEE'S RESPONSE IN OPPOSITION TO DEBTOR'S
MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION
FOR ENTRY OF ORDER APPROVING PROPOSED PRIVATE SALE**

Despite not filing a written objection to the underlying Sale Motion (defined below) and raising no objection at the hearing on the Sale Motion other than a request for a continuance, and despite the Court providing the Debtor with thirty days from the date of the entry of the Sale Order (defined below) to either submit a higher and better offer and bid deposit to the Trustee or to provide adequate protection to the Trustee and secured creditor, Trump 906, LLC ("Trump 906"), in light of the continuance request (both of which the Debtor has failed to do), the Debtor now seeks reconsideration of the Sale Order based upon the false pretext that the Property (defined below) is a "quasi-homestead" property, and as a result, the Court should enter an "[o]rder allowing Patrizia Bonaduce to dismiss her case and file a Chapter 13 bankruptcy so she can attempt to save her home."  But this argument fails to consider, or more likely, flatly ignores the fact that a corporate debtor is not entitled to claim Florida's homestead exemption on real property or be a debtor in a chapter 13 proceeding.  So, the Debtor purposefully conflates itself and its rights with its principal, Patrizia Bonaduce ("Bonaduce"), and her rights, in an effort to frustrate and impede the Trustee's sale of the Property, just as the Debtor and its principal frustrated and impeded Trump 906's pre-petition foreclosure proceeding.

## I. Background

1. This case commenced as a Chapter 7 proceeding on December 18, 2019.

2. The Debtor has an ownership interest in real property described as Lot 17, of CORRECTED PLAT OF GOLF VIEW ESTATES, according to the plat thereof, as recorded in plat Book 41, at Page 58, of the Public Records of Miami-Dade County, Florida and commonly known as 636 NE 105 Street, Miami, Florida 33138 (the "Property") pursuant to a Special Warranty Deed recorded on June 24, 2016 in Official Record Book 30127 at Page 1335 in the Public Records of Miami-Dade County, Florida.

3. The Property is not and cannot be claimed as exempt, and therefore, is property of the bankruptcy estate ("Estate") pursuant to 11 U.S.C. § 541. *See In re Duque,* 33 B.R. 201 (Bankr. S.D. Fla. 1983) (denying individual debtor's claim of homestead exemption where property was owned by corporation, even though individual debtor owned all stock in said corporation); *see also In re Steffen,* 391 B.R. 874 (Bankr. M.D. Fla. 2008)*, aff'd*, 405 B.R. 486 (M.D. Fla. 2009) (holding that an individual debtor could not claim homestead exemption in property as a stockholder despite individual debtor allegedly residing in property at the time of her bankruptcy filing).

4. Although not disclosed on Schedule "D" [ECF 1], public records reflect that the Property is encumbered by, among other potential claims, a mortgage in favor of creditor, Trump 906 securing a debt in the principle amount of $800,000.00.

5. On February 28, 2020, Trump 906 filed Proof of Claim 1-1 asserting that it has a claim against the Debtor in the amount of $1,159,945.50, $800,000.00 of which is secured against the Property (the "Trump 906 Claim").

**The Pre-Petition Foreclosure Proceeding**

6.As set forth in the Trump 906 Claim and the attachments thereto, the Debtor not only defaulted on its loan obligations by failing to make the monthly payments due under the terms of the loan, but the loan itself <u>matured almost two years ago on June 1, 2018</u>.

7.Due to the Debtor's default, on March 20, 2019, Trump 906 filed a verified foreclosure complaint against, among others, the Debtor and Bonaduce in the Circuit Court of the 11th Judicial District, in and for Miami-Dade County, Florida, styled <u>Trump 906,, LLC v. Golf View Nest, LLC, et al.</u>, Case No. 19-008739-CA-01 (the "Foreclosure Proceeding"). And in the Foreclosure Proceeding, Trump 906 subsequently filed a Motion for Summary Final Judgment of Foreclosure and Attorneys' Fees and Costs, which was scheduled for hearing on December 19, 2019 until the Debtor filed for bankruptcy on the eve of said hearing.

**The Sale Motion**

8.Shortly after the 341 meeting of creditors, Trump 906 offered to purchase the Estate's right, title and interest in the Property for $10,000.00 in cleared funds, "AS-IS, WHERE-IS," with no representation or warranties of any type being given by the Trustee or his professional, and subject to all liens, claims, encumbrance, interests and defenses, whether known or unknown, including, without limitation, the Trump 906 Claim (the "Offer").

9.In light of, among other things, the Property's taxed assessed value of $797,692.00, the outstanding Trump 906 Claim, which far exceeds the tax assessed value of the Property, and the pending Foreclosure Proceeding against the Property, the

3

Case 19-26849-AJC    Doc 36    Filed 05/11/20    Page 4 of 11

CASE NO.: 19-26849-BKC-AJC

Trustee accepted the Offer, subject to: (a) the Court's approval; (b) higher and better offers as required by 11 U.S.C. § 363; and (c) the terms and conditions set forth in the Sale Motion.

10. On February 28, 2020, the Trustee filed his Motion for Entry of Order Approving Proposed Private Sale of Estate's Right, Title and Interest in Real Property [ECF 21] (the "Sale Motion") seeking approval of the Offer, which was heard on April 7, 2020 at 10:30 a.m. (the "Hearing").

11. Notably, no written objection to the Sale Motion was ever filed by the Debtor <u>during the one-and-a-half-month period between the filing of the Sale Motion and the Hearing</u>.

12. However, on March 27, 2020, the Debtor did file a Motion to Dismiss Chapter 7 Proceeding [ECF 26] (the "Motion to Dismiss"), which was promptly withdrawn prior to the Hearing. The Debtor not only made the same improper arguments in its Motion to Dismiss that its making again now[1], but also falsely claimed that the loan on the Property "was done fraudulently" and that Bonaduce's "signature was forged and she as [sic] never made aware of the mortgage until a foreclosure was filed." These falsehoods are tellingly missing from the Debtor's instant Motion for Reconsideration of Order Granting Motion for Entry of order Approving Proposed Private Sale [ECF 33] ("Motion for Reconsideration") and are most likely the reason why the Debtor withdrew its Motion to Dismiss only five days after filing it.

---

[1] For example, in paragraph 1 of the Motion to Dismiss states, "[d]ebtor wants to partake in the Chapter 13 MMM program and wishes to save her home," which as explained above, a corporate entity is not entitled to do.

4

**The Sale Order**

13.     At the Hearing, Eric Brumfield ("Brumfield"), on behalf of his client, the Debtor, alleged that he had difficulty establishing communication with his client, and as a result thereof, requested a thirty-day continuance of the Sale Motion at the Hearing.

14.     Interestingly, this alleged lack of communication did not impede Brumfield's ability to file the Motion to Dismiss on behalf of his client less than two weeks before the Hearing nor did it impede his ability to withdraw the Motion to Dismiss on behalf of his client just days before the Hearing.

15.     Nevertheless, in order to provide the Debtor and its principal with the thirty-day continuance sought by Brumfield <u>and</u> an opportunity to retain the Property, without significantly delaying the Estate's rightful ability to sell and transfer the Property if the Debtor and its principal failed take advantage of the opportunities provided to them, the Court entered its Order Granting Trustee's Motion for Entry of order Approving proposed Private Sale of Estate's Right, Title and Interest in Non-Exempt Real Property to Trump 906, LLC or its Related Assign [ECF 31] (the "Sale Order"), which ordered, in pertinent part, the following:

> a. The Proposed Sale of the Estate's right, title and interest in the Property to the Buyer for the total sum of $10,000.00 in cleared funds (the "Purchase Price"), on the terms and conditions set forth in the Motion, as modified herein (the "Sale"), is hereby approved in all respects pursuant to Section 363 of the Bankruptcy Code; provided, however that the Debtor shall have thirty (30) days from the date of entry of this Order to: (i) submit a higher and better offer in writing to the Trustee for the Estate's right, title and

interest in the Property; and (ii) tender a $10,000.00 bid deposit in cleared funds to the Trustee[2];

b. In the event the Debtor timely (i) submits a higher and better offer in writing to the Trustee, and (ii) tenders a $10,000.00 bid deposit in cleared funds to the Trustee, this Order shall be vacated, and in its place, the Court shall enter an Order (1) Approving Competitive Bidding Procedures and (2) Scheduling Date to Conduct an Auction of the Property[3]; and

c. In the event the Debtor fails to timely (i) submit a higher and better offer in writing to the Trustee, or (ii) tender a $10,000.00 bid deposit in cleared funds to the Trustee, the Trustee is authorized, directed and empowered to fully perform under, consummate and implement the terms of the Sale as soon as practicable for the Trustee, but in no event shall the closing take place any sooner than thirty (30) days from date of entry of this Order. Notwithstanding the foregoing, the Trustee, Buyer and Debtor may agree to further extend the closing date of the Sale if the Debtor provides adequate protection that is acceptable to the Trustee and the Buyer at their sole discretion.[4]

16. However, rather than proceed with the opportunities graciously extended by the Court to make a higher and better offer or provide adequate protection to Trump 906

---

[2] Sale Order, ¶ 18.

[3] Id., ¶ 19.

[4] Id., ¶ 21.

and the Trustee, the Debtor now seeks another bite of the apple by filing the instant Motion for Reconsideration.

## II. Response in Opposition to Motion for Reconsideration

17. Just like the Foreclosure Proceeding before this, it appears the Debtor and its principal, Bonaduce, are once again resorting to stall tactics as the Motion for Reconsideration presents no issues of mistake, fraud or excusable neglect the led to the Sale Order being entered and raises no newly discovered evidence that has any bearing in this matter. Moreover, as set forth above, the corporate Debtor is improperly seeking relief (i.e., claim of "quasi-homestead" exemption and conversion to Chapter 13) in the Motion for Reconsideration that it's clearly not entitled to.

18. As this Court has previously determined, there are three grounds to grant a motion to reconsider: "1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or manifest injustice." There are three grounds to grant a motion to reconsider: "1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or manifest injustice." *In re Sanomedics, Inc.*, 16-21659-RAM, 2018 WL 3816772, at *2 (Bankr. S.D. Fla. July 25, 2018)

19. In the Motion for Reconsideration, the Debtor does not argue that there's been any intervening change in controlling law or that a clear error or manifest injustice needs to be corrected. The Debtor only presents the following alleged facts, all of which are irrelevant, that supposedly "came to light"[5] after the Hearing:

---

[5] Motion for Reconsideration, ¶ 5.

a. The Property was purchased by Golf View Nest, a corporation co-owned 50% by Bonaduce's ex-husband, Miguel Petrizan ("Petrizian"), and 50% by Bonaduce, in October 2014 for $830,000 with a private loan of $587,000 at 8% interest from Trump 906;

b. In 2016, Petrizian allegedly made Bonaduce resign her 50% in Golf View Nest and Petrizian became the sole owner of Golf View Nest in order to obtain a cash-out of $213,000 for himself, increasing the debt with Trump 906 to $800,000.

c. Petrizian allegedly explained to Bonaduce that she had to be out of the company in order to be approved for the loan. Bonaduce was allegedly deceived by Petrizian and Trump 906 Mortgage Broker Jorge Moran (<u>Debtor fails to explain how it was purportedly deceived</u>) and Petrizian allegedly promised Bonaduce to use this money to pay the Property's expenses.

d. In 2016, Petrizian allegedly transferred the Property from Golf View Nest to the Debtor, with Petrizian and Bonaduce each owning 50% interest in the Debtor, and Bonaduce was allegedly not aware that Petrizian never notified Trump 906 about this change in ownership.

e. In 2017, Petrizian allegedly stopped property taxes and also ceased paying the mortgage despite having allegedly said he would use that cash-out money to pay the house's expenses.

8

    f. Petrizian and Bonaduce in divorced in 2017 and Bonaduce found that the Property was 6 months late on mortgage payment and had two and half years in unpaid property taxes.

    g. Bonaduce bought Petrizian's 50% shares of Jumanji Nest for $40,000 in a private divorce agreement and Bonaduce never saw Petrizian again.

    h. Between 2018 and 2019, Trump 906 allegedly rejected three contact-offers made by Bonaduce to purchase the debt.[6]

20. Despite the Debtor and Bonaduce's efforts to spin a compelling tale, all of the allegations made above were obviously known to the Debtor and Bonaduce prior to the Hearing (and prior to their decision to place the Debtor and the Property in a Chapter 7 liquidation proceeding) – the Debtor and Bonaduce cannot conceivably claim they were not aware of the Property loan or transfer history that they admittedly partook in, nor can they now feign ignorance to Bonaduce's own divorce or the Debtor's corporate formation and ownership history.  And the Debtor's counsel aparent failure to conduct his own due diligence and learn of these facts prior to the Hearing or filing the instant case, does not absolve the Debtor of its own failure to disclose these facts.  "As a general principle, motions for reconsideration should be granted only upon showing of newly discovered evidence, **evidence which could not have been obtained by due diligence at the time of the original hearing and which evidence would have produced a materially different ultimate result**. They should not be used to correct an egregious legal error, an error which is patent and evident in the record…" *In re Immenhausen Corp.*, 166 B.R. 449, 451 (Bankr. M.D. Fla. 1994) (emphasis added).

---

[6] *See* Motion for Reconsideration, ¶¶ 6-19.

21.     In any event, even if the foregoing allegations were considered newly discovered evidence (again, they're not), none of the allegations if timely raised would have produced a different result.  The allegations, all of which relate to the pre-petition history of the Debtor and the Property, do not change the fact that the Debtor and Bonaduce made the conscious decision to file a Chapter 7 liquidation proceeding, resulting in the Property becoming property of the Estate and subject to administration by the Trustee.  And none of the allegations undo or negate the fact that the Court approved sale of the Property to Trump 906 satisfied the elements of the "sound business purpose" test[7] and that the sale was the most viable way to monetize the Estate's right, title and interest in the Property, and in the best interest of the Estate.  That the sale is not in the best interest of the Debtor or Bonaduce is ultimately irrelevant and the Court should not invoke the extraordinary remedy of setting aside the Sale Order just because their stall tactics backfired, and the Debtor now regrets its hasty decision to file for bankruptcy.

**WHEREFORE**, Joel L. Tabas, as Chapter 7 Trustee of the Bankruptcy Estate of Jumanji Nest, LLC, respectfully requests this Honorable Court enter an Order: (1) denying the Motion for Reconsideration; (2) enforcing its Sale Order; and (3) granting such other and further relief this Court deems just and proper.

---

[7] See *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

CASE NO.: 19-26849-BKC-AJC

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 11, 2020, a true and correct copy of the foregoing was served via electronic transmission to the parties who are currently on the list to receive e-mail notice/service for this case, and via U.S. Mail to:

Jumanji Nest LLC
636 NE 105 St
Miami, FL 33138

        Respectfully submitted,

        /s/ Joshua D. Silver
        Joshua D. Silver
        Florida Bar No. 100022
        Attorneys for Chapter 7 Trustee
        TABAS & SOLOFF, P.A.
        25 S.E. 2nd Avenue, Suite 248
        Miami, FL 33131
        Phone: (305) 375-8171
        Fax: (305) 381-7708
        E-mail: jsilver@tabassoloff.com