## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                            **CASE NO. 19-26849-AJC**
                                                   **CHAPTER 7**

**JUMANJI NEST LLC,**

    **Debtor.**

## SUPPLEMENTAL DOCUMENTS IN SUPPORT OF
## MOTION FOR RECONSIDERATION, DK #33

Debtor, JUMANJI NEST LLC, (hereinafter referred to as "Debtor"), and undersigned counsel, hereby files this Supplemental Documents In Support of Motion for Reconsideration of Order Granting Motion for Entry of Order Approving Private Sale, DK#33, pursuant to Fed.R.Civ.P. 59(e), as made applicable to this matter by Fed.R.Bankr.P. 9024[1] and in support thereof, states as follows:

1. This supplement relates to Debtor's motion for reconsideration, DK #33.

2. Debtor disputes the property is in disrepair.

3. The property is 70 years old (built in 1951) and needs a lot of updates.

4. When the divorce occurred, it had pending inconclusive remodelings to be completed: floors, gutters, etc.

5. The last offer was $600,000 plus the $60,000 in repairs that referred to those inconclusive remodelings.

---

[1] **Rule 9024. Relief from Judgment or Order:** Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by §727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by §1144, §1230, or §1330. In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.

6.  Current prices are still at $250/sq. ft. Banks honored a $600,000 mortgage before this pandemic; after this situation market prices might change.

7.  Debtor has been steadily making repairs on the home and putting her own money into the property.

8.  Debtor is trying to gather the amount necessary to reimburse the bank for the property taxes that were paid.

9.  Regarding the last of the three (3) contracts that Debtor wrote, she confirmed that this sum of $700,000.00 was the whole amount to be spent:

> a. $600,000: Contract
>
> b. $60,000: Pending remodelings
>
> c. $40,000: Closing costs
>
> **d. $700,000: Total money out-of-pocket**

10. After one and half years of struggling to try to negotiate the house, with all the stress and distress Debtor has been suffering in the pursuit of recovering the house, Debtor had in her mind the sum of $700,000 when she wrote her narrative, but indeed that figure was the total amount, and not the offer of the amount of $600,000 given by bank appraisers.

11. The following documents in support of Debtor's motion for reconsideration are attached:

12. Executed Contract to purchase the house for **$995,000** in November 2018 (rejected by Jorge Moran).

13. Certificate of Signatures.

14. Proof of funds for Debtor for **$845,000:** House value dropped considerably and although Debtor never stopped negotiating, banks did not honor such an amount anymore.

15. Insurance of the property until 2019. The property was insured.

16. Request for payoff. Comparables dropped to $250/sq. ft., thus the property at approximately 2,400 sq. ft. was appraised at $600,000 in 2019.

17. Pictures of the property.

WHEREFORE, for the foregoing reasons, the Debtor, JUMANJI NEST LLC, prays that the Court grants the motion for reconsideration, as well as an Order seeking cancellation of the sale, an Order allowing Patrizia Bonaduce to dismiss her case and file a Chapter 13 bankruptcy so she can attempt to save her home, and for such other good and further equitable relief at law that the Debtor is so justly entitled.

Respectfully submitted,

/s/ Eric Scott Brumfield
Eric Scott Brumfield, Esq.
Law Office of Eric Scott Brumfield, Esq.
Attorney at Law
AET II 7270 NW 12th St. Ste. 545
Miami, Florida 33126
(305) 406-3490
esb@lawesb.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by E-Service to the parties listed on the service list on this 11th day of May, 2020.

Respectfully submitted,

/s/ Eric Scott Brumfield, Esq.
Eric Scott Brumfield, Esq.
Law Office of Eric Scott Brumfield, Esq.

3

Attorney at Law
AET II, 7270 NW 12th St. Ste. 545
Miami, Florida 33126
(305) 406-3490
esb@lawesb.com

Label Matrix for local noticing
113C-1
Case 19-26849-AJC
Southern District of Florida
Miami
Wed Dec 18 12:04:55 EST 2019

Jumanji West LLC
636 NE 105 St
Miami, FL 33138-2054

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Trump 906 LLC
255 Alhambra Circle
Suite 500
Coral Gables, FL 33134-7417

Eric S Brumfield
7270 NW 12 St # 545
Miami, FL 33126-1927

Joel L Tabas
25 SE 2nd Avenue
Suite 248
Miami, FL 33131-1508

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

End of Label Matrix
Mailable recipients      5
Bypassed recipients      1
Total                    6

## "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



1* **PARTIES:** _____ JUMANJI NEST LLC. _____ ("Seller"),
2* and _____ KMTG PROPERTY MANAGEMENT & INVESTMENT LLC _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*     (a) Street address, city, zip: _____ 636 NE 105th STREET, MIAMI SHORES, FL 33138 _____
8*     (b) Located in: ___ MIAMI DADE ___ County, Florida. Property Tax ID #: ___ 11-2231-012-0150 ___
9*     (c) Real Property: The legal description is __ GOLF VIEW EST CORR PL PB 41-58, LOT 17, LOT SIZE
10     IRREGULAR, OR 17441-0537 1196 1
11
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14     by other terms of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18     drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19     and other access devices, and storm shutters/panels ("Personal Property").
20*     Other Personal Property items included in this purchase are: _____
21
22     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*     (e) The following items are excluded from the purchase: _____
24

25                          **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE** (U.S. currency):........................................................ $ ___ 995,000.00 ___
27*     (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ...... $ ___ 5,000.00 ___
28     The initial deposit made payable and delivered to "Escrow Agent" named below
29*     **(CHECK ONE): (i)** ☐ accompanies offer or **(ii)** ☐ is to be made within _____ (if left
30     blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31     OPTION (ii) SHALL BE DEEMED SELECTED.
32*     Escrow Agent Information: Name: __ KMTG PROPERTY MANAGEMENT & INVESTMENTS
33*     Address: _____ 8350 NW 52nd. TERRACE, SUITE 109, DORAL , FL 33166 _____
34*     Phone: __ 786-4527219 __ E-mail: _____ Fax: _____
35*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*     days after Effective Date ................................................................ $ _____
37     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ _____
39*     (d) Other: ................................................................ $ _____
40     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*     transfer or other **COLLECTED** funds ................................................ $ ___ 990,000.00 ___
42     **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*     _____ November 10, 2018 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47     the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this Contract or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*     ("Closing") on _____ November 22, 2018 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials **MKT** _____              Page 1 of 12              Seller's Initials **PB** _____ _____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 090738-400154-1711148

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 428f19f6-0e10-4f1f-8687-5b7569ded13e ]

6

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☒ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☐ (b) This Contract is contingent upon Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller. (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or (2) terminate this Contract.

Buyer's Initials **MKT** _____   Page 2 of 12   Seller's Initials *PB* _____

FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 090738-400154-1711148

*forms*simplicity

Electronically Signed using eSignOnline™ [ Session ID : 428f1985-0e10-4f1f-8687-0a7569deb13e ]

109    (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110    expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111    will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112    by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.
113    (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114    default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115    from all further obligations under this Contract.
116    (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117    fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118    default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119    have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120    of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121    Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122    Contract.
123*    ☐ (c) Assumption of existing mortgage (see rider for terms).
124*    ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125    **CLOSING COSTS, FEES AND CHARGES**

126    9. **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127    (a) **COSTS TO BE PAID BY SELLER:**
128    • Documentary stamp taxes and surtax on deed, if any          • HOA/Condominium Association estoppel fees
129    • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
130    • Title search charges (if Paragraph 9(c)(iii) is checked)       • Seller's attorneys' fees
131*    • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)  • Other:_____
132    If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133    a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134    Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135    such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
136    (b) **COSTS TO BE PAID BY BUYER:**
137    • Taxes and recording fees on notes and mortgages          • Loan expenses
138    • Recording fees for deed and financing statements          • Appraisal fees
139    • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
140    • Survey (and elevation certification, if required)         • Buyer's attorneys' fees
141    • Lender's title policy and endorsements                • All property related insurance
142    • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
143    • Municipal lien search (if Paragraph 9(c)(ii) is checked)        9 (c)(iii) is checked.)
144*    • Other:_____
145*    (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146    then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147    licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148    Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149    obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150    copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151    premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152    forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153    and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154    closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a
155    search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156    liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157    **(CHECK ONE):**
158*    ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159    premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160    endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161    provider(s) as Buyer may select; or
162*    ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163    services related to Buyer's lender's policy, endorsements and loan closing; or

Buyer's Initials **MKT**_____     Page 3 of 12     Seller's Initials _PB_____ _____
FloridaRealtors/FloridaBar-ASIS-5   Rev 4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 090738-400154-1711148

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 428f19f5-0e10-4f1f-8687-fa7569de013e ]

8

164* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy
165 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168* policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
170 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
173* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☐ N/A shall pay for a home warranty plan issued by
174* _____ at a cost not to exceed $_____. A home
175 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
177 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182 be paid in installments **(CHECK ONE):**
183* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184 Installments prepaid or due for the year of Closing shall be prorated.
185* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189 **DISCLOSURES**

190 **10. DISCLOSURES:**
191 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.
195 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.
201 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.
203 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.
217 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION: RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have _____ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 428ff19f9-0e10-4f1f-8687-fa7569deb13e ]

10

274 consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275 or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276 expend, any money.
277 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278 cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279 to Buyer.

280 **ESCROW AGENT AND BROKER**

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283 within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
284 of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286 take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287 liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288 the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289 the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290 dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291 notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292 extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293 comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294 mediation, arbitration, interpleader or an escrow disbursement order.
295 In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298 shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299 Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300 termination of this Contract.
301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309 **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323 **DEFAULT AND DISPUTE RESOLUTION**

324 **15. DEFAULT:**
325 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Buyer's Initials **MKT** _____ Page 6 of 12 Seller's Initials *PB* _____

FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 090738-400154-1711148

Electronically Signed using eSignOnline™ [ Session ID : 428f19f5-0e10-4f1f-8687-fa7569deb13e ]

329 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
333 **(b) SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337 performance.
338 This Paragraph 15 shall survive Closing or termination of this Contract.
339 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341 as follows:
342 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344 16(b).
345 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350 16 shall survive Closing or termination of this Contract.
351 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357 **18. STANDARDS:**
358 **A. TITLE:**
359 **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing
371 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373 with law.
374 **(ii) TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

383 deliver written notice to Seller for a specified period not to exceed 120 days within which
384 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388 further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
389 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390 thereby releasing Buyer and Seller from all further obligations under this Contract.
391 **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398 preparation of such prior survey, to the extent the affirmations therein are true and correct.
399 **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401 **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411 thereunder.
412 **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416 general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth
417 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419 paid or will be paid at Closing.
420 **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424 is located) of the next business day.
425 **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435 further obligations under this Contract.
436 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

439 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440 Contract.
441 **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442 (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.
447 (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.
452 (iii) **FinCEN GTO NOTICE.  If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**
457 (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458 provides insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the escrow
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460 **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461 **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472 **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.
489 **L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492 **M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

Buyer's Initials **MKT**_____                Page 9 of 12                Seller's Initials *PB*_____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 090738-400154-1711148

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 428f19f5-0e10-4f1f-8687-fa7569deb13e ]

14

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S.  COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T.  RESERVED.**

**U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding.

(i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum required, if any, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials **MKT** _____  Page 10 of 12  Seller's Initials **PB** _____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 090738-400154-1711148

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 4281f3f5-0e10-47f7-8667-fa7569deb13e ]

15

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

553     parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554     directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555     (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556     transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557     applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558     disbursement in accordance with the final determination of the IRS, as applicable.
559     (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560     8288 and 8288-A, as filed.
561     **W.  RESERVED**
562     **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563     *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564     *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565     *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
566     *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567     *Closing.*

568     **ADDENDA AND ADDITIONAL TERMS**

569*    **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570     Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ K.  RESERVED | ☐ T.  Pre-Closing Occupancy |
| ☐ B.  Homeowners' Assn. | ☐ L.  RESERVED | ☐ U.  Post-Closing Occupancy |
| ☐ C.  Seller Financing | ☐ M.  Defective Drywall | ☐ V.  Sale of Buyer's Property |
| ☐ D.  Mortgage Assumption | ☐ N.  Coastal Construction Control | ☐ W.  Back-up Contract |
| ☐ E.  FHA/VA Financing |      Line | ☐ X.  Kick-out Clause |
| ☐ F.  Appraisal Contingency | ☐ O.  Insulation Disclosure | ☐ Y.  Seller's Attorney Approval |
| ☐ G.  Short Sale | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ Z.  Buyer's Attorney Approval |
| ☐ H.  Homeowners/Flood Ins. | ☐ Q.  Housing for Older Persons | ☐ AA.  Licensee Property Interest |
| ☐ I.  RESERVED | ☐ R.  Rezoning | ☐ BB.  Binding Arbitration |
| ☐ J.  Interest-Bearing Acct. | ☐ S.  Lease Purchase/ Lease Option | ☐ Other: _____ |
| | | _____ |
| | | _____ |

571*    **20. ADDITIONAL TERMS:** _____
572    _____
573    _____
574    _____
575    _____
576    _____
577    _____
578    _____
579    _____
580    _____
581    _____
582    _____
583    _____
584    _____
585    _____
586    _____
587    _____

588     **COUNTER-OFFER/REJECTION**

589*    ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590     deliver a copy of the acceptance to Seller).
591*    ☐ Seller rejects Buyer's offer.

Buyer's Initials **MKT** _____      Page 11 of 12      Seller's Initials *PB* _____ _____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 090738-400154-1711148

*formsimplicity*

Electronically Signed using eSignOnline™ [ Session ID : 428f19f5-0e10-4f1f-8687-0a7569deb13e ]

16

592 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598 *interested persons.*

599 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600 TO BE COMPLETED.

601* Buyer: _Mayerlin K. Tirado_____    Date: 11/8/2018_____

602* Buyer: _____    Date: _____

603* Seller: _Patrizia Boraduce_____    Date: 11/8/2018_____

604* Seller: _____    Date: _____

605  Buyer's address for purposes of notice           Seller's address for purposes of notice
606* 8350 NW  52nd Terrace, Suite 109                 636 NE 105th. Street, Miami Shores FL 33138
607* Doral FL 33166 _____         _____
608* _____         _____

609  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614  made by Seller or Listing Broker to Cooperating Brokers.

615* _____         _____
616  **Cooperating Sales Associate, if any**           **Listing Sales Associate**

617* _____         _____
618  **Cooperating Broker, if any**                    **Listing Broker**

 

Powered By :

## Certificate of Authenticity

### Session Information

| | | | |
|---|---|---|---|
| Signing Session ID: | 428f19f8-0e10-4f1f-8687-fa7569deb13e | Status: | Completed |
| Transaction Name: | VENTA DE JUMANJI A DANIELA | Created On: | 11/8/2018 4:06:20 PM EST |
| Session Title: | CONTRATO JUMANJI A KMTG | Last Modified: | 11/8/2018 6:25:22 PM EST |
| Documents: | 1 | Owner: | Patrizia Bonaduce |
| Signers: | 2 | Company: | Miami Real Estate Group, LLC |

### Signer Information

| Signature Events | Signature | Timestamp | |
|---|---|---|---|
| Patrizia Bonaduce | *Patrizia Bonaduce* | Sent: | 11/8/2018 4:09:59 PM EST |
| p.bonaduce@yahoo.com | | Viewed: | 11/8/2018 4:28:23 PM EST |
| Signer Security:    Email | IP Address: 104.62.127.231 | Disclosure: | 11/8/2018 4:28:23 PM EST |
| | ID: 6c1bba64-a068-4df1-8bde-4e1da3a3d3be | Signed: | 11/8/2018 4:32:35 PM EST |
| Mayerlin K. Tirado | *Mayerlin K. Tirado* | Sent: | 11/8/2018 4:32:39 PM EST |
| al@kmtginvest.com | | Viewed: | 11/8/2018 6:23:20 PM EST |
| Signer Security:    Email | IP Address: 65.202.91.10 | Disclosure: | 11/8/2018 6:23:20 PM EST |
| | ID: ebd71f4c-7415-46d3-aa4b-7c3bbf300cb0 | Signed: | 11/8/2018 6:25:21 PM EST |

### Session Documents

| Document | Signatures | Initials | Dates | FormFields | Dropdown | Checkbox | RadioButton |
|---|---|---|---|---|---|---|---|
| ASISResidentialContractforSaleandPurchase.pdf | 2 | 24 | 2 | 0 | 0 | 0 | 0 |

### Session Activity

| Timestamp | IP Address | Activity |
|---|---|---|
| 11/8/2018 6:25:22 PM EST | 65.202.91.10 | Session completed and closed by Patrizia Bonaduce |
| 11/8/2018 6:25:21 PM EST | 65.202.91.10 | Signing Completed by Mayerlin K. Tirado (al@kmtginvest.com) |
| 11/8/2018 6:23:20 PM EST | 65.202.91.10 | Signature created and disclosure approved by Mayerlin K. Tirado (al@kmtginvest.com) |
| 11/8/2018 4:32:39 PM EST | 104.62.127.231 | Invitation sent to Mayerlin K. Tirado (al@kmtginvest.com) by Patrizia Bonaduce |

18

| 11/8/2018 4:32:35 PM EST | 104.62.127.231 | Signing Completed by Patrizia Bonaduce (p.bonaduce@yahoo.com) |
| 11/8/2018 4:31:58 PM EST | 104.62.127.231 | Signature created and disclosure approved by Patrizia Bonaduce (p.bonaduce@yahoo.com) |
| 11/8/2018 4:31:00 PM EST | 104.62.127.231 | Invitation re-sent to Patrizia Bonaduce(p.bonaduce@yahoo.com) by Patrizia Bonaduce |
| 11/8/2018 4:28:23 PM EST | 104.62.127.231 | Signature created and disclosure approved by Patrizia Bonaduce (p.bonaduce@yahoo.com) |
| 11/8/2018 4:09:59 PM EST | 104.62.127.231 | Invitation sent to Patrizia Bonaduce(p.bonaduce@yahoo.com) by Patrizia Bonaduce |
| 11/8/2018 4:09:59 PM EST | 104.62.127.231 | eSignOnline Session Created by Patrizia Bonaduce |

## Disclosure

**Consumer Disclosure**

Please read the information below regarding the terms and conditions of receiving documents, contracts, and disclosures electronically through the eSignOnline electronic signature system. If this information is to your satisfaction and you agree to the terms and conditions, please confirm your acceptance and agreement by checking the box 'I Agree to the above Consumer Disclosure' and selecting the 'Create and Approve Signature button'.

**Electronic distribution of documents and contracts**

Miami Real Estate Group, LLC (We, us, or the Company) acknowledges your agreement to receive required documents, contracts, notices, disclosures, authorizations, and other documents electronically through the eSignOnline electronic signature system. We appreciate and thank you for doing your part to go paperless and save our environment. Through the eSignOnline electronic signature system, we are able to save time and process a transaction faster. We do not have to print and mail paper copies, wait for signatures that could take days or weeks, and there are no delays associated with waiting for you to mail it back to us. Unless you tell us otherwise in accordance with the procedures described herein this disclosure, we will provide documents through this electronic method during the course of our relationship with you. If you do not agree with this process and method, please let us know as described below.

Miami Real Estate Group, LLC outsources personal information to a third party processing and storage service provider which is located in the USA. The Buyer and Seller hereby acknowledge that personal information processed and stored by a US third party service provider is subject to the laws of that country and that information may be made available to the US government or its agencies under a lawful order made in that country.

**Paper copies**

During the signing process on eSignOnline, you will have the opportunity to download and print your copies of the documents before and after signing. At any time, you may contact us to obtain paper copies of documents that have been provided to you electronically. To request paper copies, you must send an email to p.bonaduce@yahoo.com and in the body of the email state your full name, address, telephone number, and the name of the document or transaction that you would like a paper copy for. If any fees apply, we will notify you.

**Withdrawing your consent to sign electronically**

Once you have decided and agreed to the following disclosure to sign documents electronically, you may at any time thereafter decide to withdraw your consent and receive required documents only in paper format. There are several ways to inform us that you no longer wish to received documents and sign electronically:

  a) During the electronic signing process, you may elect to 'decline' and indicate your reasons for declining and withdrawing your consent.
  b) Send an email to p.bonaduce@yahoo.com and in the body of the email indicate your full name, address, telephone number and that you no longer wish to sign electronically and instead would like to receive paper copies

Please be aware that withdrawing your consent to sign electronically may result in delays and/or more time to complete a transaction. We will then have to print and mail paper copies to you, wait for you to receive and sign documents, then wait for you to mail it back and follow the same procedure with other parties to the transaction.

**How to contact Miami Real Estate Group, LLC**

At any time, you may contact us to change your email and contact information, request paper copies, or to indicate your change in consent to sign electronically hereafter.

19

Contact Name : Patrizia Bonaduce
Email Address : p.bonaduce@yahoo.com
Phone Number :

**Hardware and Software Requirements**

The following are minimum hardware and software requirements to use the eSignOnline electronic signature system.

Operating Systems: Windows® 8, Windows® 7, Windows Vista®, Mac OS® X 10.6 and higher.
Browsers: Google Chrome® 36 and higher, Internet Explorer® 9.0 and higher, Mozilla Firefox® 31.0 and higher, Safari® 5.1.7 and higher.
Screen Resolution: 800 x 600 minimum
Security Settings: Allow per session cookies
PDF Reader: Acrobat® or similar software to view and print PDF files

**Your Acknowledgment and Consent to use electronic signatures**

To confirm to us that you can access this information electronically, which will be similar to other electronic documents that we will provide to you, please verify that you were able to read this electronic consumer disclosure and that you also were able to print on paper or electronically save this page for your future reference and access. Further, you consent to receiving notices and disclosures in electronic format on the terms and conditions described herein this consumer disclosure, please let us know by checking the 'I agree with the above Consumer Disclosure' box below.

By checking the 'I agree with the above Consumer Disclosure' box, I confirm that I can access and read this electronic consumer disclosure to consent to receipt of electronic documents, I can print on paper if I so choose, the disclosure and/or save to a place where I can print it for future reference and access, and until I notify Miami Real Estate Group, LLC otherwise, I consent to receive from Miami Real Estate Group, LLC electronic documents that are required to be provided or made available to me by Miami Real Estate Group, LLC during the course of my relationship with Miami Real Estate Group, LLC.

20



**HIS Capital** *Funding*
250 North Orange Avenue #610 Orlando, Florida 32801
**www.HISCapital***Funding***.com**
**877-452-6569**

## Proof of Funds Letter

RE: Jumanji Nest LLC

    Real Estate Acquisitions

      Congratulations Jumanji Nest LLC, Domenica Patrizia Bonaduce, have been approved for business purpose investments within the State of Florida not to exceed the amount of $845,000.00 (Eight Hundred Forty Five Thousand dollars). **Funding approvals are reviewed quarterly and updated based upon current liquidity and ability to perform.**

      Funding of any transaction is contingent upon fulfillment of all underwriting requirements. Should you have any questions or concerns regarding this approval, contact Alberto Suarez III (321) 430-7519, or the undersigned at the above referenced number.

Signed August 21ᵗʰ 2018

Rick Melero
Principal
CA Broker #01937801
FL Division of Real Estate License # CQ1047702
Should you have any further questions, please contact Luis Daniel Roque or Rick Melero at the above referenced numbers.



**People's Trust**
Insurance Company
Better Prepared. Simplified Recovery.
*Simply a Better Way®*

18 People's Trust Way • Deerfield Beach, FL 33441-6270

**Important Phone Numbers**
Customer Service: 800-500-1818
To Report a Claim: 877-333-1230
Mortgagee Fax: 561-282-0627
Main Fax: 561-807-0811
www.PTI.insure

**Policy Number:** BFL637964-00

### People's Trust Insurance Company
### Basic Choice Dwelling Declarations Page

**Insured's Name and Mailing Address:**
DANIELA BRODNER
636 NE 105TH ST
MIAMI SHORES FL 33138-2054

**Effective Date:** 11/05/2018
**Expiration Date:** 11/05/2019
12:01 a.m. Eastern Time at the
location of the Residence Premises

**Endorsement Date:** 11/06/2018

**Insured Location (Residence Premise):**
636 NE 105TH ST
MIAMI SHORES, FL 33138-2054

**Your Agency:**
PEOPLE'S TRUST INSURANCE COMPANY (0001/00-00)
18 PEOPLE'S TRUST WAY
DEERFIELD BEACH, FL 33441
(800) 500-1818

**County:** MIAMI-DADE

| Deductibles | | | |
|---|---|---|---|
| **All Other Perils:** | $2,500 | **Windstorm or Hail (Other Than Hurricane):** | $2,500 |
| **Hurricane:** | **$16,830  (3%)** | **Sinkhole:** | **No Coverage** |

*Coverage is only provided where a limit of liability and a premium is shown.*

| Property and Liability Coverage | Limit of Liability | Annual Premium |
|---|---|---|
| Coverage A. Dwelling | $561,000 | $15,310.00 |
| Coverage B. Other Structures | EXCL | EXCL |
| Coverage C. Personal Property | $56,100 | $1,417.00 |
| Coverage D. Loss of Use | $56,100 | INCL |
| Coverage E. Personal Liability | $300,000 | $72.00 |
| Coverage F. Medical Payments to Others | $2,000 | INCL |
| | **Total Base Premium** | **$16,799.00** |

| Optional Coverages and Adjustments | | |
|---|---|---|
| BCFL0008 (05/16) | Fungi Wet or Dry Rot Yeast or Bacteria Coverage Selection Form | INCL |
| BCFLE023 (05/16) | Preferred Contractor | $(305.00) |
| | Ordinance or Law Coverage | $214.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **Total Optional Coverages and Adjustments** | **$(91.00)** |

| Mandatory Additional Charges | |
|---|---|
| Emergency Management Preparedness & Assistance Trust Fund | $2.00 |
| Managing General Agency Fee | $25.00 |
| | |
| **Total Mandatory Additional Charges** | **$27.00** |

| **TOTAL ANNUAL POLICY PREMIUM:** **(Including Assessments and All Surcharges)** | $ | **5,950.00** |
|---|---|---|
| The portion of your premium for Hurricane Coverage is: | $ | 3,646.00 |
| The portion of your premium for All Other Coverage is: | $ | 2,221.00 |

PTIC DP D001 (11/17)

Page 1 of 3

**Policy Number:** BFL637964-00

| Policy Forms and Endorsements | | |
|---|---|---|
| OIR-B1-1670 (1-1-06) | INSCR (11/17) | FCRA (11/17) |
| DP E024 (12/12) | DP E005 (12/12) | DP A007 (10/16) |
| DP A002 (12/12) | DP 1OC (10/16) | BCFLE023 (05/16) |
| BCFL0017 (05/16) | BCFL0006 (05/16) | BCFL0002 (08/17) |
| BCFL0001 (05/16) | ADV INS (11/17) | |

| Rating Credits and Surcharges | |
|---|---|
| Wind Mitigation Credit | $(12,079.00) |
| Building Code Effectiveness Grading Surcharge | $153.00 |
| Protection Class Construction Credit | $(7.00) |
| Age of Home | $368.00 |
| Distance to Coast Surcharge | $217.00 |
| Insurance Score Surcharge | $962.00 |
| Hurricane Year of Construction Credit | $(285.00) |
| Deductible Adjustment | $(114.00) |

| Rating Information | | | |
|---|---|---|---|
| Form Type | Basic Choice | Terrain | C |
| Year Built | 1951 | Roof Covering | FBC Equivalent |
| Construction Type | Masonry | Roof Decking | Dimensional Lumber (Wood) |
| County | MIAMI-DADE | Roof Deck Attachment | C - 8d @ 6in / 6in |
| Territory | 34 | Roof to Wall Connection | Toe Nail |
| Protection Class | 4 | Roof Shape | Hip |
| BCEGS | 99 | Secondary Water Resistance | No |
| Number of Families | 1 | Opening Protection | Hurricane (Class A) |
| Occupancy | Owner | FBC Wind Speed | N/A |
| Burglar Alarm | No | Wind Speed Design | N/A |
| Fire Alarm | No | Debris Region | Yes |
| Automatic Fire Sprinkler | | Wind/Hail Excluded | No |

| Mortgagee(s), Additional Insured(s), and/or Additional Interest(s) | |
|---|---|
| 1st Mortgage  RESIDENTIAL HOME FUNDING CORP IOLTA, 100 LANIDEX PLAZA, PARSIPPANY, NJ 07054 | Loan #: |

A premium adjustment of $ _____(12,079.00)_____ is included to reflect the building's wind loss mitigation features or construction techniques that exist. Credits range from __0__% to __88__%.

A premium adjustment of $ _____153.00_____ is included to reflect the building code grade for your area. Adjustments range from a __1.9__% surcharge to a __13.2__% credit.

**Endorsement Reason:**
Increased Dwelling Coverage
Executed by Authorized Signature:

_Tom Gulley_
Authorized Representative
PTIC DP D001 (11/17)

Page 2 of 3

**Policy Number:** BFL637964-00

## Important Notices

LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR WINDSTORM OR HAIL (OTHER THAN HURRICANE) LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.

## To Report A Claim Call (1) 877-333-1230

PTIC DP D001 (11/17)

Page 3 of 3

24

Global Trust Finance, LLC# MBR2090, NMLS# 1531328 | Originator: Kery Alce, NMLS# 1342438

# Request for Payoff

☑ New Request      ☐ Revision Request:      Original Date:

| To (Name, Address, Phone, Fax & Contact Name): | From (Name, Address, Phone, Fax & Contact Name): | |
|---|---|---|
| TRUMP 906, LLC<br>255 ALHAMBRA CIR, STE 500<br>Coral Gables, FL 33134<br><br>Contact: JORGE MORAN | Global Trust Finance<br>5460 N State Rd 7, Suite 110<br>North Lauderdale, FL 33319<br>Ph: 954-328-7227      Fax: 954-653-3870<br>Contact: Ricardo Medina | |
| Account Number (Account to be Paid Off): | Signature of Requestor: | Title: |

| Property Address: | |
|---|---|
| 636 NE 105 STREET<br>MIAM SHORES, FL 33180 | |

| Borrower 1: (Name & Address): | Borrower 2: (Name & Address): |
|---|---|
| DOMENICA P BONADUCE<br>636 NE 105 STREET<br>MIAMI SHORES, FL 33138<br>Social Security Number:      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<br>Home Phone Number:      786-537-7868<br>Business Phone Number: | <br><br><br>Social Security Number:<br>Home Phone Number:<br>Business Phone Number: |

**My signature below authorizes verification of this information**

Signature of Applicant(s):

X _____     _____     _____     _____
Borrower 1                        Date      Borrower 2                        Date

☐ Fax Response to:      _____
☑ E-Mail Response to:    ke23al@gmail.com
☐ Mail the payoff statement to the "From" Address above via:    _____
☐ Other:      _____

Special Instructions:

## Payoff Information

Is there a Prepayment Penalty?  No ✓   Yes ___  (If Yes, please describe below):

PREPAYMENT EXPIRED ON May /2019

Payoff Amount for the Account Referenced Above (including Per Diem) through 07/15/18 (Date).

$  823,973.32

| Per Diem Rate:<br>199.04 | Interest to Date of Closing: | Pro Rated PMI amount:<br>N/A |
|---|---|---|
| Amount of Escrow Balance:  ∅ | | Any Penalties or Late Charges Due: |

Payoff Prepared By:  JORGE MORAN

Calyx Form - reqpayoff.frm(07/06)

25

Global Trust Finance, LIC# MBR2090, NMLS# 1531328 | Originator: Kery Alice, NMLS# 1342438

Bonaduce, Domenica

# REQUEST FOR VERIFICATION OF RENT OR MORTGAGE

We have received an application for a loan from the applicant listed below, to whom we understand you rent or have extended a loan.

INSTRUCTIONS:   LENDER - Complete items 1 thru 8. Have applicant(s) complete item 9. Forward directly to ??lender?? named in Item 1.
LANDLORD/CREDITOR - Please complete Part II as applicable. Sign and return directly to the lender named in Item 2.

## PART I - REQUEST

| 1. TO (Name and address of Landlord/Creditor) | 2. FROM (Name and address of lender) |
|---|---|
| TRUMP 906 LLC<br>255 ALHAMBRA CIR, STE. 500<br>CORAL GABLES, FL, 33134 | Kery Alice<br>Global Trust Finance<br>5460 N State Rd 7, Suite 110<br>North Lauderdale, FL 33319<br>(P) 954-816-2878<br>(F) 954-653-3870 |

| 3. SIGNATURE OF LENDER | 4. TITLE<br>Processing | 5. DATE<br>06/14/2018 | 6. LENDER'S NUMBER |
|---|---|---|---|

### 7. INFORMATION TO BE VERIFIED.

| | PROPERTY ADDRESS | ACCOUNT IN THE NAME OF: | ACCOUNT NO. |
|---|---|---|---|
| ✔ MORTGAGE<br>☐ LAND CONTRACT<br>☐ RENTAL<br>☐ | 636 NE 105 STREET<br>MIAMI SHORES, FL, 33138 | JUMINTING/T LLC | |

| 8. NAME AND ADDRESS OF APPLICANT(S) | 9. SIGNATURE OF APPLICANT(S) |
|---|---|
| DOMENICA P BONADUCE, SSN: 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<br><br>636 NE 105 STREET<br>MIAMI SHORES, FL 33138<br>(H) 786-537-7868 (C/Alt) 786-537-7868<br>(Email) patrizia@bonaduce.net | X<br><br>X |

## PART II - TO BE COMPLETED BY LANDLORD/CREDITOR

| ☐ RENTAL ACCOUNT | ✔ MORTGAGE ACCOUNT   ☐ LAND CONTRACT | |
|---|---|---|
| Tenant has rented since _____ | Date mortgage originated 05/09/16 | Interest rate 8.99 % 1/0 |
| to _____ | Original mortgage amount $ 800,000 | FIXED _____ ARM _____ |
| Amount of rent $ _____ per _____ | Current mortgage balance $ 823,977.32 | FHA _____ VA _____ |
| Is rent in arrears? Yes _____ No _____ | Monthly Payment P & I only $ 5,993.33 | FNMA _____ CONV _____ |
| Amount $ _____ Period _____ | Payment with taxes & ins. $ 0 | Next pay date 07/01/18 |
| Number of times 30 days past due* _____ | Is mortgage current? Yes ✔ No _____ | No of late payments* 0 |
| Is account satisfactory? Yes _____ No _____ | Is mortgage assumable? Yes _____ No ✔ | Insurance agent: _____ |
| | Satisfactory account? Yes ✔ No _____ | |
| | * Number of times account has been 30 days overdue in last 12 months | |

ADDITIONAL INFORMATION WHICH MAY BE OF ASSISTANCE IN DETERMINING APPLICANT(S) CREDIT WORTHINESS

| SIGNATURE OF CREDITOR | TITLE ACCOUNT MANAGER<br>PHONE NO. 305.587.7969 | DATE<br>06/27/18 |
|---|---|---|

The confidentiality of the information you have furnished will be preserved except where disclosure of this information is required by applicable law. The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

Calyx Form - vom.frm (11/07)



































